E-FILED
Wednesday, 28 September, 2022  02:18:28 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| TERRANCE LIGGINS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   Case No. 2:19-cv-02129-SLD |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

ORDER

Before the Court are Petitioner Terrance Liggins's *pro se* Motion Under 28 U.S.C.

§ 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Pro Se 2255

Motion"), ECF No. 1, and counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255

("Counseled 2255 Motion"), ECF No. 7.  For the reasons that follow, the motions are DENIED

IN PART.

**BACKGROUND[1]**

On May 2, 2017, a grand jury returned a two-count indictment against Petitioner charging

him with one count of possessing 500 grams or more of a mixture or substance containing

cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and one

count of possessing a firearm after having previously been convicted of a crime punishable by

more than one year of imprisonment in violation of 18 U.S.C. § 922(g)(1).  Indictment 1–2, Cr.

ECF No. 1.  Counsel was appointed to represent Petitioner at first, *see* Cr. May 8, 2017 Min.

Entry (appointing the Federal Public Defender's office); Cr. May 17, 2017 Text Orders

(appointing alternate counsel after the Federal Public Defender's office withdrew due to a

---

[1] References to Petitioner's underlying criminal case, *United States v. Liggins*, 2:17-cr-20032-SLD-EIL-1, take the form: Cr. ___.

conflict), but Petitioner later retained attorney James Todd Ringel to represent him, *see* Not.
Appearance, Cr. ECF No. 15.

On November 27, 2017, Petitioner pleaded guilty to the cocaine charge pursuant to a
written plea agreement.  *See* Cr. Nov. 27, 2017 Min. Entry; Plea Agreement, Cr. ECF No. 17.
Under the plea agreement, the Government agreed to move to dismiss the firearm charge at the
time of sentencing.  Plea Agreement ¶ 4.  Petitioner agreed to cooperate with law enforcement in
exchange for the Government informing the Court of the extent of his cooperation and
potentially moving for a sentence reduction.  *See id.* ¶¶ 15–19.  Under the written agreement
Petitioner waived: 1) his right to require the Government to file an information stating any prior
felony drug convictions that it would rely on to seek an enhanced sentence, *id.* ¶ 27; 2) his "right
to appeal any and all issues relating to th[e] plea agreement and conviction and to the sentence,
including any fine or restitution, within the maximum provided in the statutes of conviction, and
the manner in which the sentence . . . was determined," other than a "claim of involuntariness or
ineffective assistance of counsel," *id.* ¶ 28; and 3) his "right to challenge any and all issues
relating to [his] plea agreement, conviction and sentence, including any fine or restitution, in any
collateral attack, including, but not limited to, a" motion under 28 U.S.C. § 2255, "so long as the
sentence is within the maximum provided in the statutes of conviction, except only those claims
which relate directly to the negotiation of this waiver itself, involuntariness, and to the
ineffective assistance of counsel," *id.* ¶ 29.

Sentencing was set for April 6, 2018.  *See* Cr. Nov. 27, 2017 Min. Entry.  On March 16,
2018, Ringel moved to withdraw from the case, stating that Petitioner had failed to meet his
obligations to Ringel.  Mot. Withdraw ¶ 2, Cr. ECF No. 20.  Judge Colin S. Bruce, then

presiding over the case, denied the motion, Cr. Apr. 2, 2018 Min. Entry, but granted Petitioner's

subsequent motion for a continuance of the sentencing hearing, Cr. Apr. 3, 2018 Text Order.

United States Probation prepared an initial presentence investigation report ("PSR"), Cr.

ECF No. 19, and a revised PSR, Cr. ECF No. 21, in advance of sentencing. In the revised PSR,

the probation officer calculated that the offense involved 22.75 kilograms of cocaine. Revised

PSR ¶ 10. Accordingly, Petitioner's base offense level was listed as 32. *Id.* ¶ 17. The probation

officer assigned a two-level increase for possessing a firearm, *id.* ¶ 18, and a two-level increase

for maintaining a premises for the purpose of distributing cocaine, *id.* ¶ 19. The probation

officer found that Petitioner was a career offender under the Sentencing Guidelines due to prior

felony convictions for aggravated battery and possession of a controlled substance with intent to

deliver. *Id.* ¶ 24. Based on a statutory maximum sentence of forty years, an offense level of 34

would apply to a career offender; because Petitioner's otherwise applicable offense level, 36,

was higher, the probation officer applied that level. *Id.* Applying a three-level reduction for

acceptance of responsibility, the probation officer found that Petitioner's total offense level was

33. *Id.* ¶¶ 25–27. Based on that offense level and Petitioner's criminal history category of VI,

*id.* ¶ 35, the PSR listed his Sentencing Guidelines custody range as 235 to 293 months, *id.* ¶ 63.

Petitioner filed objections to the revised PSR. *See id.* at 20–22. First, he asserted that the

calculation of the amount of cocaine involved in the offense was based on an incorrect

representation of his statements to law enforcement. *Id.* at 20–21. Second, he asserted that he

was not a career offender because the prior offenses that were relied upon were too old to qualify

as predicate offenses. *Id.* at 22. The Government filed a motion to correct the revised PSR,

requesting—among other corrections—that the PSR reflect that Petitioner had two prior felony

drug offenses which meant he was subject to an enhanced sentence under 21 U.S.C.

3

§ 841(b)(1)(B).  Mot. Correct 2, Cr. ECF No. 25.  Identifying the correct statutory custody range as ten years to life imprisonment, the Government argued that Petitioner's offense level under the career offender Guidelines would accordingly be 37.  *Id.*

The sentencing hearing was held on May 11, 2018 before Judge Bruce.  *See* Cr. May 11, 2018 Min. Entry.  At the hearing, Ringel "agree[d] with each recommendation" for corrections made by the Government.  *See* Sentencing Hr'g Tr. 3:2–8, Cr. ECF No. 36.  And he withdrew the objections to the revised PSR, explaining that "[o]ne [wa]s not an objection" and the other "would basically compete with an agreement [they] ha[d] with the [G]overnment."  *Id.* at 4:4–9. Petitioner affirmed that he spoke with Ringel about withdrawing the objections and agreed with withdrawing the objections.  *See id.* at 5:10–15.  He also denied having any other objections counsel was unwilling to make.  *Id.* at 5:7–9.  The Court adopted the revised PSR with the corrections made to it by the Government.  *Id.* at 10:7–11.  The corrections resulted in Petitioner having an adjusted offense level of 34 and a criminal history category of VI and, therefore, an advisory Guidelines range for custody of 262 to 327 months.  *Id.* at 10:11–13; Am. PSR ¶ 63, Cr. ECF No. 26.

The Government requested a downward departure from the low end of the Guidelines range for Petitioner's substantial assistance, recommending a reduction of between ten and twenty percent.  Sentencing Hr'g Tr. 11:17–12:2.  Ringel requested that Judge Bruce consider giving a more than ten percent reduction and offered brief additional comments, highlighting that Petitioner accepted responsibility, that Petitioner assisted the Government despite believing his family to be in harm's way, and that Petitioner was not selling drugs but instead "was basically a storage facility" for drugs.  *Id.* at 13:22–15:5.  Judge Bruce granted the Government's request for a downward departure, "giving [Petitioner] more than 10 percent off," and sentenced Petitioner

4

to 216 months of imprisonment.  *Id.* at 22:10–18; Judgment 2, Cr. ECF No. 27.  No appeal was filed.

    On May 9, 2019,[2] Petitioner filed the Pro Se 2255 Motion asserting an ineffective assistance of counsel claim primarily based on counsel's failure to make objections to the revised PSR; a claim that his aggravated battery conviction does not qualify as a career offender predicate; and a claim that his due process rights were violated by Judge Bruce's bias, as evidenced by *ex parte* communications Judge Bruce had with members of the United States Attorney's Office in the Central District of Illinois.  Pro Se 2255 Mot. 4–8.[3]  On January 14, 2021, the case was reassigned to this Court.  *See* Jan. 14, 2021 Text Order.  The Court appointed counsel to represent Petitioner, *see* Feb. 2, 2021 Text Order, and counsel filed the Counseled 2255 Motion, which is intended to supplement rather than replace the Pro Se 2255 Motion, *see* Counseled 2255 Mot. 1.  In the Counseled 2255 Motion, Petitioner adds a claim that Judge Bruce failed to recuse himself under 18 U.S.C. § 455(a).  *Id.* at 13.  The Government opposes both the Pro Se 2255 Motion and the Counseled 2255 Motion, arguing that Petitioner's nonconstitutional claim that Judge Bruce violated § 455(a) is not cognizable in a § 2255 proceeding, that Petitioner waived his right to bring many of his claims in a collateral attack under his plea agreement, that Petitioner procedurally defaulted his claims, and that Petitioner's ineffective assistance of counsel claims are without merit.  *See* Resp. 16, ECF No. 8.  No reply was filed.

---

[2] For an inmate confined in an institution, his paper is deemed filed when deposited in his institution's mailing system.  *Cf.* Rule 3(d), Rules Governing § 2255 Proceedings ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing.").  Petitioner declares that he placed the motion in the prison mailing system on May 9, 2019.  Pro Se 2255 Mot. 13.

[3] For clarity, the Court uses the CM/ECF-generated page numbers because the first page of the 2255 Motion is marked as page two.

**DISCUSSION**

I.     **Legal Standard**

A prisoner in federal custody may move the court that imposed his sentence to vacate, set aside, or correct it.  28 U.S.C. § 2255(a).  "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process."  *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).  Accordingly, such relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack."  *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255(a)).

II.    **Analysis**

Petitioner's claims can be separated into substantive claims—his due process and § 455(a) claims and his claim that his aggravated battery conviction does not qualify as a career offender predicate—and ineffective assistance of counsel claims.  The Court will address the substantive and ineffective assistance of counsel claims separately.

       **a.   Substantive Claims are Barred by the Collateral Attack Waiver**

Petitioner's plea agreement clearly contains a waiver of his right to collaterally attack his conviction and sentence with limited exceptions.  *See* Plea Agreement ¶ 29.  The Government argues that the collateral attack waiver covers Defendant's substantive claims and should be enforced.  *See* Resp. 34–37.

"It is well-settled that waivers of direct and collateral review in plea agreements are generally enforceable." *Hurlow v. United States*, 726 F.3d 958, 964 (7th Cir. 2013).[4]  If a collateral review waiver is voluntary and knowing, it is generally enforceable.  *Dowell v. United States*, 694 F.3d 898, 902 (7th Cir. 2012).  "There are only limited instances when [the court] will not enforce a knowing and voluntary waiver of . . . collateral review."  *Id.*  Waivers are unenforceable, for example, if "the district court relied on a constitutionally impermissible factor (such as race)" in determining the sentence or "the sentence exceeded the statutory maximum."  *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011) (quotation marks omitted).  Waivers are also unenforceable "against claims that counsel was ineffective in the negotiation of the plea agreement."  *Hurlow*, 726 F.3d at 964.

As Petitioner failed to mention his waiver in either of his motions and did not file a reply, he has not argued that the waiver was not entered into voluntarily and knowingly.  And he represented in the plea agreement itself that it was entered into voluntarily and knowingly.  *See* Plea Agreement ¶ 30 (acknowledging that Petitioner "ha[d] not been coerced, threatened, intimidated, or in any other way involuntarily persuaded to waive [his] rights" and that he was "waiving those rights because [he] *personally* believe[d] it [wa]s in [his] best interest"); *id.* ¶ 38 (similar).  While Petitioner vaguely asserts that counsel misadvised him regarding his plea and potential sentence, Pro Se 2255 Mot. 4, there are no allegations that there was ineffective assistance with respect to negotiation of the waiver or the plea agreement.

And, again, as Petitioner has not addressed the waiver, he has not identified any other reason for the Court not to enforce his waiver.  The Court finds no exception identified by the

---

[4] The Seventh Circuit analyzes waivers of the right to appeal and to bring a collateral attack similarly.  *See, e.g.*, *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999) ("Our reasons for upholding the voluntariness requirement in the context of waivers of direct appeal rights apply with equal force to the right to bring a collateral attack pursuant to § 2255.").

Seventh Circuit applies.  There is no allegation that the sentence was based on a constitutionally

prohibited factor like race or gender or that the sentence exceeds the statutory maximum.  *United

States v. Adkins*, 743 F.3d 176, 192 (7th Cir. 2014).  And though "[t]here are at least some due

process exceptions to a waiver of appellate review," *id.*, in the absence of any argument from

Petitioner that there is an exception for a claim that a judge was actually biased against a

defendant, *see Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) ("Due process guarantees an

absence of actual bias on the part of a judge . . . ." (quotation marks omitted)), the Court is not

inclined to find one exists.  Indeed, other courts have enforced waivers against judicial bias

claims.  *See United States v. Carver*, 349 F. App'x 290, 292–94 (10th Cir. 2009); *Anderson v.

United States*, No. CV 12-1025 MCA/WPL & CR 10-0086 MCA, 2013 WL 12164686, at *5–6

(D.N.M. Mar. 7, 2013), adopted by *Anderson v United States*, No. CV 12-1025 MCA/WPL &

CR 10-0086 MCA, 2015 WL 12859352, at *3–4 (D.N.M. Aug. 17, 2015).

Even if there were such an exception, the Court finds that Petitioner has not shown that

Judge Bruce was biased against him.  "Due process requires 'a fair trial in a fair tribunal, before

a judge with no actual bias against the defendant or interest in the outcome of his particular

case.'"  *Shannon v. United States*, 39 F.4th 868, 883 (7th Cir. 2022) (quoting *Bracy v. Gramley*,

520 U.S. 899, 904–05 (1997)).  A due process claim can be proved by evidence of the judge's

actual bias or by showing that "the probability of actual bias on the part of the judge or

decisionmaker is too high to be constitutionally tolerable."  *Id.* (quoting *Rippo v. Baker*, 137 S.

Ct. 905, 907 (2017)).  Petitioner's argument that Judge Bruce was biased against him is based on

*ex parte* emails Judge Bruce exchanged with the United States Attorney's Office in the Central

District of Illinois.  *See, e.g.*, Counseled 2255 Mot. 15–16.  These emails have been detailed and

summarized elsewhere.  *See Shannon*, 39 F.4th at 883 (citing *In re Complaints Against District

8

*Judge Colin S. Bruce*, Nos. 07-18-90053 & 07-18-90067 (7th Cir. Jud. Council May 14, 2019), http://www.ca7.uscourts.gov/judicial-conduct/judicial-conduct_2018/07_18-90053_and_07-18-90067.pdf).

The Seventh Circuit has decided a few cases involving due process bias claims based on Judge Bruce's emails which are instructive here.  In *United States v. Williams*, 949 F.3d 1056, 1061–63 (7th Cir. 2020), the court held that Judge Bruce presiding over a defendant's trial did not violate the defendant's due process rights where the defendant relied primarily on the *ex parte* emails but the emails did not concern the defendant's case.  It noted the Special Committee appointed by the Judicial Council of the Seventh Circuit to review complaints against Judge Bruce related to the *ex parte* emails "found no evidence and received no allegation that Judge Bruce's conduct or ex parte communications impacted any of his rulings or advantaged either party."  *Id.* at 1061–62 (quotation marks omitted).  Moreover, the court noted that though the communications exposed a preexisting relationship with members of the United States Attorney's Office, such a relationship "alone does not create a due process violation." *Id.* at 1062.  It found that the defendant had "presented no evidence to rebut th[e] presumption" that "judges rise above . . . potential biasing influences." *Id.* (quotation marks omitted).  Like in *Williams*, the emails here do not concern Petitioner or his case, *see* Counseled 2255 Mot. 16, and, moreover, Petitioner makes no allegation that Judge Bruce decided an issue against him or made any comments in his case indicating a bias. *Cf. Williams*, 949 F.3d at 1061–62 (denying the defendant's argument that Judge Bruce stating on the record in the defendant's case that he did not find the prosecutor to be sneaky showed bias in favor of the Government).

In *Shannon*, the Seventh Circuit did find that Judge Bruce's participation in a defendant's sentencing hearing, as opposed to only his trial, may warrant a different result under the due

9

2:19-cv-02129-SLD-TSH  # 9   Page 10 of 20

process clause because judges have considerable discretion at sentencing. *Shannon*, 39 F.4th at 884–86. In that case, Judge Bruce made comments at sentencing that the court concluded could have been interpreted as a warning that if the defendant appealed, he would impose a harsher sentence. *Id.* at 886–87. Though it ultimately declined to rule on whether there was a due process violation, the Seventh Circuit appeared to be troubled by the combination of the *ex parte* emails and the comments. *See id.* at 884 (declining to resolve the constitutional issue and instead remanding for resentencing under the court's supervisory authority). But here, there is no similar comment that would lend itself to a finding that Judge Bruce was biased against Petitioner. Instead, Petitioner is relying on the *ex parte* emails alone. The Court thus finds that Petitioner has failed to show either actual bias or a risk of bias so high that it violates due process.

The Court will enforce the collateral attack waiver against the substantive claims: Petitioner's due process actual bias claim, the claim that Judge Bruce violated § 455(a) by failing to recuse himself due to an appearance of bias, and the claim that Petitioner's aggravated battery conviction does not qualify as a career offender predicate. With respect to the due process claim, the Court rules in the alternative that Petitioner has failed to show that Judge Bruce was biased against him.

### b. Ineffective Assistance of Counsel Claims

Because the waiver explicitly excludes ineffective assistance of counsel claims, Plea Agreement ¶ 29, the Court will address those claims on the merits.

### i. Legal Background

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel. U.S. Const. amend. VI. Claims of ineffective assistance of counsel are subject to the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). This test requires a

2:19-cv-02129-SLD-TSH   # 9   Page 11 of 20

petitioner to show that his counsel's performance "fell below an objective standard of reasonableness" and that he suffered prejudice as a result. *Id.* at 688, 692. The court applies "a strong presumption that decisions by counsel fall within a wide range of reasonable trial strategies." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quotation marks omitted). The petitioner "must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). To demonstrate prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### ii. Petitioner's Claims

Petitioner claims Ringel provided constitutionally ineffective assistance of counsel on the following bases: "[l]ack of interest in the case," "[m]isadvising regarding the plea and potential sentence," "making mistakes with regard to the [PSR] . . . and his absense [sic] while [Petitioner] was doing the [PSR] report," failing to raise objections to the revised PSR "[s]uch as challenging the career offender enhancement and also the relevant conduct," and trying to withdraw days before the sentencing hearing was scheduled. Pro Se 2255 Mot. 4–5; Counseled 2255 Mot. 4–5 (asserting that counsel was ineffective for failing to challenge a sentencing enhancement).

### 1. Lacked Interest, Absence, Withdrawal

The Court easily concludes that Petitioner's claims that Ringel lacked interest in the case, was absent while Petitioner "was doing the [PSR] report" (by which he presumably means being interviewed by a probation officer), and tried to withdraw days before the sentencing hearing are without merit. The claim that Ringel lacked interest lacks sufficiently specific allegations to

11

warrant either an evidentiary hearing or relief.  *See Martin v. United States*, 789 F.3d 703, 706

(7th Cir. 2015) (holding that no hearing is required "if the petitioner makes allegations that are

vague, conclusory, or palpably incredible, rather than detailed and specific" (quotation marks

omitted)).  And Petitioner identifies no prejudice he suffered by any of these alleged errors.

### 2.   Erroneous Advisement Regarding Plea and Potential Penalties

Petitioner's claims that Ringel misadvised him regarding the plea and potential sentence

are also easily resolved.  The only specific allegations Petitioner makes regarding this assertion

are that Ringel "advised that if [he] took the current plea, [he] would not be sentenced as a career

offender[] which nearly triple[d] his . . . sentence," and that Ringel "told [him] if [he] didn't

agree to withdraw any and all objections and challenges that [his] plea would be voided."  Pro Se

2255 Mot. 5.

As to Petitioner's first allegation, being sentenced as a career offender did not triple his

sentence; instead, it only raised his offense level by one.  *See* Am. PSR ¶¶ 23–24.  Moreover, this

claim is belied by the record.  The plea agreement, which Petitioner signed, representing that he

read and understood it, *see* Plea Agreement ¶ 38, specifically notes that the Court would

calculate Petitioner's offense level, *see id.* ¶ 21.  The plea agreement contains no promise

regarding application of the career offender guidelines.[5]  *See id.*; *see also id.* ¶ 38 (affirming that

no other promises, agreements, or understandings were made outside the plea agreement).

As to Petitioner's second allegation, that Ringel told him that failing to withdraw his

objections to the revised PSR would void his plea agreement, he fails to meet one or both prongs

of the *Strickland* test.  The plea agreement allows the Government to declare the plea agreement

---

[5] There is a provision stating the parties understood Petitioner was not an Armed Career Criminal under 18 U.S.C. § 924(e)(1).  *See* Plea Agreement ¶ 22.  Perhaps this is what Petitioner is referring to, but being a career offender under the Guidelines is not the same as being an Armed Career Criminal.  Petitioner was not sentenced as an Armed Career Criminal.

void if Petitioner violates its terms. *Id.* ¶ 31. This would allow the Government to reinstate the charge it agreed to dismiss or file additional charges against Petitioner. *Id.* One of the objections Ringel initially brought on Petitioner's behalf was to relevant conduct. Petitioner alleged that, as opposed to what was contained in the law enforcement report of an interview with him, he only began storing cocaine a month before his arrest. *See* Revised PSR 20–21. This would, he contended, change the drug weight attributable to him and decrease his offense level. *Id.* But making this objection would threaten to violate the plea agreement because it would seek to "minimize [Petitioner's] own actions." Plea Agreement ¶ 15. Therefore, it was not deficient performance for Ringel to advise Petitioner to withdraw this objection.

The other objection—that Petitioner was not a career offender because his convictions were more than ten years old—would not threaten Petitioner's plea agreement, so if Ringel advised Petitioner to withdraw the objection on that basis, he was wrong. But there is no prejudice from this mistake because the objection was frivolous. Under the 2016 Sentencing Guidelines, which were in effect when Petitioner was sentenced, a defendant was a career offender if he "ha[d] at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S. Sent'g Guidelines Manual § 4B1.1(a)(3) (U.S. Sent'g Comm'n 2016) ("2016 Guidelines"). "The provisions of § 4A1.2 . . . are applicable to the counting of convictions under §4B1.1." *Id.* § 4B1.2 cmt. n.3. Under § 4A1.2(e)(1), "a prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of . . . commencement of the instant offense" or "that resulted in the defendant being incarcerated during any part of such fifteen-year period" is counted. Petitioner's two prior convictions were a conviction for aggravated battery and a conviction for possession of a controlled substance with intent to deliver. Am. PSR ¶ 24. Defendant was sentenced to seven

years of incarceration in 2007 for the possession with intent to deliver conviction, *id.* ¶ 32, and to seventy-two months of incarceration on a probation revocation in 2005 for the aggravated battery conviction, *id.* ¶ 29.  The instant offense began in early 2017.  *Id.* ¶ 7.  As Petitioner was incarcerated during the fifteen-year period proceeding commencement of the instant offense, those convictions counted.  Arguing that a ten-year period applied would have been frivolous.

### 3.  Objections to the PSR or Sentence

Petitioner also claims that counsel made unspecified mistakes regarding the PSR and failed to make three or four objections to the PSR.  *See* Pro Se 2255 Mot. 4–5.  The Court finds Petitioner has made only two allegations specific enough to be addressed: that counsel failed to object to the career offender enhancement and failed to challenge the relevant conduct.  *See id.* Any other allegations are waived.

As to the relevant conduct objection, the Court has already found that counsel did not err in advising Petitioner to withdraw his objection because making the objection would have risked a finding that Petitioner had violated the plea agreement.  *See supra* Section II(b)(ii)(2).

As to the career offender objection, the Court must clarify the nature of the claim.  In his Pro Se 2255 Motion, Petitioner clearly suggests he wanted counsel to object to him being considered a career offender under the Sentencing Guidelines.  Pro Se 2255 Mot. 4–5.  In the Counseled 2255 Motion, Petitioner again suggests counsel was ineffective with respect to the career offender enhancement.  *See* Counseled 2255 Mot. 4 (using the heading, "Petitioner was not a career offender" (capitalization altered)).  But Petitioner is actually arguing that counsel was ineffective for failing to object to use of his cocaine convictions as predicates for enhancing his sentence under 21 U.S.C. § 841(b)(1)(B).  *See id.*  An argument that Petitioner was not a career offender under the Guidelines because his cocaine conviction did not qualify is meritless,

14

*see United States v. Ruth*, 966 F.3d 642, 654 (7th Cir. 2020) (holding that a "cocaine conviction under Illinois law is a controlled substance offense according to the career-offender guideline"), but the Court will consider the similar counseled argument that Petitioner was not eligible for an enhanced sentence under § 841.

21 U.S.C. § 841(b) sets the penalties for possession with intent to distribute offenses.  At the time Petitioner was charged and sentenced, the minimum sentence of imprisonment for an offense involving 500 grams or more of cocaine was generally five years and the maximum sentence was forty years.  21 U.S.C. § 841(b)(1)(B)(ii) (effective Aug. 3, 2010 to Dec. 20, 2018).  But if the defendant committed the offense "after a prior conviction for a felony drug offense ha[d] become final" there was a mandatory minimum ten-year sentence and a maximum life sentence.  *Id.*  A "felony drug offense" was defined as "an offense . . . punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances."  21 U.S.C. § 802(44) (effective July 22, 2016 to Oct. 23, 2018).

In *Ruth*, the Seventh Circuit found that because Illinois defines cocaine more broadly than federal law, an Illinois conviction for possessing cocaine with intent to deliver does not qualify as a predicate felony drug offense for purposes of the enhanced statutory range.  *Ruth*, 966 F.3d at 645–50; *cf. White v. United States*, 8 F.4th 547, 556 (7th Cir. 2021) ("The definition of cocaine under the Controlled Substances Act does not include 'positional isomers,' but the definition under Illinois law does.").  Petitioner's 2004 possession and 2007 possession with intent to deliver convictions were based on his possession of cocaine.  Am. PSR ¶¶ 30, 32.  The

Government concedes that under *Ruth*, these convictions would not qualify as felony drug offenses, *see* Resp. 43 n.15, and the Court concurs.

Petitioner can establish prejudice from Ringel's failure to argue that his cocaine convictions could not be used to subject him to an enhanced sentencing range under 21 U.S.C. § 841(b)(1)(B). Offense level under the career offender Guidelines is dictated by the statutory maximum for the offense. *See* 2016 Guidelines § 4B1.1(b). Without the enhanced sentencing range, Petitioner would have been subject to a forty-year statutory maximum. 21 U.S.C. § 841(b)(1)(B) (effective Aug. 3, 2010 to Dec. 20, 2018). With a forty-year statutory maximum, the career offender Guidelines call for an offense level of either 34 or the otherwise applicable offense level, whichever is higher. *See* 2016 Guidelines § 4B1.1(b)(2). As Petitioner's otherwise applicable offense level was 36, that would apply. *See* Am. PSR ¶ 23. With a criminal history category of VI,[6] *id.* ¶ 35, and adjusted offense level of 33 (after a three-level reduction for acceptance of responsibility), *id.* ¶¶ 25–26, Petitioner's Guidelines range would have been 235 months to 293 months. *See* 2016 Guidelines Ch. 5, Pt. A, Sentencing Table. As Petitioner was given a reduction off the low end of his Guidelines range, it is probable that he would have been sentenced to fewer than 216 months of imprisonment.

The trickier question is whether Petitioner can show that Ringel performed deficiently for failing to raise this issue at his sentencing in May 2018. The Government argues that Ringel's handling of Petitioner's case did not fall below an objective standard of reasonableness. *See* Resp. 43–48. It argues the Court must not view counsel's conduct with the benefit of hindsight now that *Ruth* has been decided and that the Court cannot "second-guess informed strategic choices." *Id.* at 47–48.

---

[6] Petitioner had a criminal history category of VI without application of the career offender Guidelines. *See* Am. PSR ¶ 35.

16

The Court finds that an evidentiary hearing is necessary to give Petitioner the opportunity to prove that Ringel performed deficiently by failing to raise a *Ruth*-type argument in May 2018 when Petitioner was sentenced.  Generally, "[t]he Sixth Amendment does not require counsel to forecast changes or advances in the law." *Valenzuela v. United States*, 261 F.3d 694, 700 (7th Cir. 2001) (alteration in original) (quotation marks omitted).  But there is an exception "where the building blocks of an argument exist and sufficiently foreshadow a change in the law such that competent counsel would at least evaluate, and possibly present, an unprecedented position." *Neal v. United States*, Civil No. 19-cv-1360-JPG & Criminal No. 14-cr-40076-JPG, 2021 WL 3668680, at *10 (S.D. Ill. July 8, 2021) (citing *Bridges v. United States*, 991 F.3d 793, 798, 804 (7th Cir. 2021)).

In *Harris v. United States*, 13 F.4th 623, 626–27, 629 (7th Cir. 2021), the Seventh Circuit considered whether the petitioner's counsel was ineffective failing to raise a *Ruth*-type argument regarding the petitioner's prior Indiana cocaine convictions, which the parties agreed on § 2255 review were not predicate offenses for an enhanced sentence under § 841.  The petitioner was sentenced in October 2017.  *Id.* at 626.  The Seventh Circuit held that "[a]t the time of [his] sentencing, his counsel should have known about a possible categorical challenge to the predicate offenses" and that "[b]y 2017, when [the petitioner] was negotiating his guilty plea, the categorical approach was well-established."  *Id.* at 629.  Indeed, it noted, "one circuit court had already applied the categorical approach to the federal 'felony drug offense' definition," *id.* (citing *United States v. Ocampo-Estrada*, 873 F.3d 661, 667 (9th Cir. 2017)), and "though no cases had then adopted the view on isomers that [the Seventh Circuit had] since embraced in *Ruth* and [*United States v. De La Torre*, 940 F.3d 938, 952 (7th Cir. 2019)—in which the Seventh Circuit held that a particular Indiana drug crime could not serve as a predicate felony

drug offense in part because the Indiana statute included isomers of methamphetamine not included in the federal definition of methamphetamine—]at least one court had considered the issue before [the petitioner's] sentencing hearing." *Id.* (citing *United States v. Jimenez-Ibarra*, 695 F. App'x 767, 770–72 (5th Cir. 2017)).

Ultimately, the Seventh Circuit found that the attorney in *Harris* did not perform deficiently—even though it was unaware of whether the attorney knew about a potential challenge—because viewed from an objective perspective, counsel made a reasonable choice to pursue a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) for twenty years of imprisonment. *Id.* at 630–31. The petitioner had two prior drug convictions, meaning that he could have been subject to life imprisonment. *Id.* at 625–26. Counsel could have made the novel argument that the petitioner's convictions did not qualify as predicate offenses, but he would have risked the government withdrawing its offer to rely on only one prior conviction and agree to a twenty-year sentence. *Id.* at 630. It was an objectively reasonable choice to pursue the plea agreement rather than risk his client being sentenced to life imprisonment if the novel argument were not accepted. *Id.* at 631.

The Court finds that, unlike in *Harris*, more factual development is necessary here, so it orders an evidentiary hearing. *See* 28 U.S.C. § 2255(b) ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon . . . ."). Ringel should have been aware of a potential categorical challenge to Petitioner's predicate offenses in 2018. *See Harris*, 13 F.4th at 629. Indeed, Petitioner alleges that he suggested to Ringel that he make this type of argument before his sentencing. *See* Pro Se 2255 Mot. 4–5 (alleging that Petitioner asked Ringel to make three or four objections to the revised PSR and that he recently found research supporting the arguments

18

he wanted Ringel to make, namely that his state statute of conviction criminalized a broader category of drugs). If true, then Ringel certainly was on notice that he should explore this potential argument. *Cf. Kimmelman*, 477 U.S. at 384 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." (quotation marks omitted)); *Harris*, 13 F.4th at 630 ("[T]his court has stated repeatedly that comparing statutory definitions is part of competent representation."). What is not clear is whether he did explore the claim and whether he decided, as a matter of strategy, to make other arguments. *See Neal*, 2021 WL 3668680, at *11 (ordering an evidentiary hearing regarding appellate counsel's performance where it "[wa]s not clear . . . whether [she] considered the argument for [the petitioner's] case and, if she did, why she chose not to raise it in favor of the arguments she did raise"). As the Court cannot resolve this claim on the papers, it orders an evidentiary hearing.[7]

## CONCLUSION

Accordingly, Petitioner Terrance Liggins's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, ECF No. 1, and counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 7, are DENIED IN PART. All of Petitioner's claims are denied except his claim that his counsel was ineffective for failing to argue that he did not qualify for an enhanced sentencing range under 21 U.S.C. § 841(b)(1)(B) due to prior felony drug convictions. The Court will hold an evidentiary hearing on this claim. A status conference is set for October 11, 2022 at 9:45 AM by video to discuss scheduling. Instructions for accessing the Court's videoconferencing system will be attached in a separate entry.

---

[7] It is the Court's understanding that Ringel has passed away. This, however, does not obviate the need for an evidentiary hearing. Other witnesses could have relevant evidence and testimony.

Entered this 28th day of September, 2022.

s/ Sara Darrow
_____
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
